26 C.C.P.A. (Patents)

## In re BELLIS.
### Patent Appeal No. 4083.

Court of Customs and Patent Appeals.

Feb. 6, 1939.

C. P. Goepel, of New York City, and R. J. Mawhinney, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

By this appeal, appellant seeks review of the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner as to the non-patentability of the following claim:

"18. In the heat treatment of groups of metals consisting of alloy steels and non-ferrous metals requiring treatment at different specific temperature ranges by means of an electric furnace provided with a heat-retentive fused bath of high heat capacity heated by electric power from a general power source which is subject to peak and minimum loads, the process which comprises heating the fused bath of said furnace to its maximum desired temperature approximately 2000° F. during a period of minimum load on said power source, discontinuing the supply of current to the bath, immersing in the bath articles of alloy steel requiring high heat-treating temperatures while said bath is at substantially its maximum temperature until said alloy steel assumes the temperature of the bath and is heat treated, successively immersing in the same bath selected non-ferrous metals requiring lower heat-treating temperatures at successively decreasing temperature levels of the bath until each metal assumes the bath temperature

and is heat treated, and supplying limited additional amounts of current to the same bath during non-minimum load periods to prolong at least one of said intermediate temperature ranges in said bath, said additional amounts of current being supplied to the bath in proportion to the quantity of metal treated in said bath at said lower temperature levels, whereby the different groups of metals requiring heat treatment at different temperature levels acquire the bath temperatures during substantially the same time of immersion."

The references cited are: Colby, 1,146,-310, July 13, 1915. Schmidt, 1,916,810, July 4, 1933.

In the brief for appellant his alleged invention is described and discussed, in part, as follows:

"The single claim involved in this appeal involves the heat treatment of groups of metals consisting of alloy steels and non-ferrous metals requiring treatment at different specific temperature ranges.

"It is important at the outset to appreciate that appellant's invention is in the art of metallurgy. Neither of the prior patents cited is in the same art.

"Appellant reduces annealing costs by reducing the cost of the electric current used to heat the electric furnace. He accomplishes this by suspending the consumption of current during the peak load period on the electric power source, but the surprising thing is that he is enabled to carry out his method and process at this very same period.

"Furnaces of this character consume great quantities of current at enormous expense and the method that reduces these costs is extremely practicable and important in the industry. Electric current at the peak load period is at a higher rate or cost than at the period of low load.

"When manufacturing plants are shut down at night the drain on the source of electric power is relaxed. The electric companies are desirous of promoting use of electric power at this low output period and therefore make price concessions to those using electricity at such time. It is therefore an economic factor to use electricity for power purposes during the interval between peak loads on the current source. Appellant draws his electricity from the source of power at the low output period and stores the potential energy secured therefrom for his daytime or factory work period use. In order to do this, however, he must have a furnace capable of withstanding a maximum temperature and he must have a molten bath in that furnace which will acquire that necessary maximum temperature and will be of such nature as to retain the same potentially throughout the day or factory working period. This bath is a chemical salt bath * * *. No such baths are found in the references cited.

"Moreover the bath and furnace holding the bath must be such as to retain the temperature of the bath at the high initial temperature for long periods of time and to permit of a drop in the temperature only slowly."

In the decision of the examiner appears the following brief statement of appellant's method: "Applicant's alleged invention relates to a method of heating a heat treating furnace, containing a bath of fusible metal for the purpose of storing heat, by supplying the heat with electric power during the night when the power rates are low. The material to be heat treated in the furnace is sorted into groups requiring the same temperature of heat treatment. During the day or working hours the materials are heat treated by subjecting the group requiring the high temperature first and then those requiring lower temperatures. Power may be supplied to the furnace during the day to maintain any one of the particular temperature levels desired."

Appellant's application bears the title "For Heat Treating Furnaces," and contains drawings of a device with description thereof in the specification, but if any apparatus claims were presented they were either cancelled or disallowed and were not included in the appeal to the board. The specification recites that "a suitable type of furnace is shown * * * which is generally disclosed in applicant's prior Patents," several of such prior patents being cited. So, the features of the apparatus evidently are conceded to be old in the art. It is assumed, however, that such mechanisms were not found to anticipate the method claim here at issue, since no one of those patents is cited as a reference.

Both of the reference patents relate particularly to devices used in cooking, especially baking, and it is noted that in both all the claims are apparatus claims, no method claim appearing in either.

In the statement of the examiner, following the appeal to the board, the following was said of the patent to Colby: "This patent was relied upon to show the use of electric power during 'off peak' periods to

supply heat to a stove or furnace and wherein the heat is stored in the stove by the use of a fusible metal. The heat produced by the electric current causes the metal to melt and the heat so stored is used in the cooking."

As to the Schmidt patent the examiner's statement says: "This patent discloses a method of heating very similar to applicant's method. The furnace is provided with heat storage means A which is heated during the night on 'off peak' electric current supplied to the furnace. The baking goods to be baked is sorted into groups and those requiring the highest heat are baked first; for example, the biscuits or other pastries requiring a high heat are baked first, then the bread next and the cookies last which require a lower temperature. The furnace is provided with heating elements B so that current may be supplied during the day to maintain the desired temperature level."

The discussion by the board differs in some respects from that of the examiner. For example, the board points out that by following appellant's procedure one is "able to get a curve representing the current consumption which has rather a flat characteristic" (which curve, it may be said, is illustrated by a line in one of appellant's drawings), and states: "It is admitted that the steps of heat treating tools as defined in the appealed claim are old and the alleged novelty must necessarily reside in the distribution of the work so as to produce this flat curve. It is not seen that this operation comes within any one of the statutory subject matters of invention. It is really a method of shop management, which is quite analogous to a method of doing business and the latter has repeatedly been held as not coming within the terms of the statutes."

It is insisted on behalf of appellant that in the foregoing the board dealt "with only one element of appellant's method claim," and, standing alone, this would seem to be true, but the board continued by referring briefly to both the reference patents, and it seems to us that a fair interpretation of its decision is that all steps of the claim were analyzed by it, although not in as great detail as they were by the examiner. There is no indication in the board's decision that it disagreed with what the examiner had held as to the applicability of the references to the features for which they were cited, but it made more direct reference to steps regarded as obvious than did the examiner.

Upon the whole, we think the rejections below, taking the decisions together and in their entirety, were based upon the prior art plus obviousness of some features, and that the only question which we are called upon to determine is whether such rejections were justified for those reasons.

This involves, at least to some extent, the question of analogy between the art dealt with in the patents and the art dealt with by appellant. These respective arts have been sufficiently described, and appellant urges their non-analogy.

We think it obvious that neither of the patent devices, designed for cooking foods, is adapted to carrying out appellant's method for the treatment of metals. For example, appellant teaches "immersing" the metals in the bath, and the "immersing" step is not shown in the patents, nor is any structural feature there shown for immersion, but it was pointed out by the examiner that the step of immersing metals is old in the metal treating art and that this was conceded by appellant. Another feature appearing in the appealed claim which is not shown in the references relates to the degree of temperature to which the fused bath is heated, but, as was said by the examiner, "the treatment of particular types of metals within certain temperature ranges" is not claimed by appellant to be new. Appellant points out that he assorts his metals into groups, and urges that Schmidt does not teach the assorting of bakery products into groups. In assorting the metals into groups, however (so that he may first treat those requiring the highest temperatures, thereby lowering the temperature so that a group requiring only such lower temperature may be next treated and so on through the process), appellant seems only to be doing the obvious, and the selection or assorting does not require invention.

In cases where references are cited from a field far removed from the field of the claim, it is not always easy to reach a correct conclusion upon the question of patentability. If the claim before us stood rejected alone on the references cited against it, we should feel constrained to disagree with the tribunals below, but those references do not constitute all the prior pertinent art. The concessions in appellant's specification with respect to the state of the art may and should be looked to as well. When this is done, and when the rule of obviousness as to certain features described in the claim is applied, we are not

convinced that the conclusion reached by the tribunals of the Patent Office was erroneous.

The decision of the Board of Appeals of the United States Patent Office is affirmed.

Affirmed.