49 CCPA

**Application of William True DAVIS, Jr., and Fred M. Murdock.**

**Patent Appeal No. 6825.**

United States Court of Customs and Patent Appeals.

July 18, 1962.

———◇———

Gillette & Virgil, Cushman, Darby & Cushman, Washington, D. C. (Theodore C. Virgil and Alvin Guttag, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Serial No. 408,983, filed February 8, 1954.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the Primary Examiner's rejection of all claims in appellants' patent application [1] entitled "Vaccine."

The references relied on are:

Wilson, "Biological Products," September 1912, pages 274–275.

New and Non Official Remedies, 1953, pages 419–275.

Freund, Annual Review of Microbiology, 1947, Vol. I, page 296.

Ward et al., Proc. Soc. Exptl. Biol. and Med., July 1950, pages 536–537.

Ramon et al., Squibb Abst. Bulletin, Nov. 1, 1950, Vol. 23, page 1382.

Appellants' invention relates to a single injectable dose of two antigens for immunizing animals against two diseases, viz., immunizing hogs against hog cholera and swine erysipelas or immunizing dogs against canine distemper and canine hepatitis.

Although the antigens may be of either viral or bacterial origin, the application states that one antigen must be live and the other dead.

Regarding prior practice in this field, appellants' specification states:

"As will be readily appreciated, wherever it is necessary to effect immunization against two or more diseases, it is most desirable to be able to accomplish this by a single injection. To this end various antigens have previously been combined to form single vaccines capable of simultaneous immunization against several diseases. However, the combination of a live antigen and a dead one has never before been accomplished. This is apparently due to the fact that chemical attenuating and preserving agents,

which are usually present in dead vaccines, produce, or at least were thought to produce, a harmful effect on the live antigens.

"As a result, wherever animals are to be immunized against several diseases requiring the use of both live and dead antigens, it has been the practice to effect immunization separately against each disease. For example, swine are normally immunized against swine erysipelas and hog cholera, this being accomplished by two separate immunizations using respectively a killed bacterin for the swine erysipelas and a modified live vaccine for the hog cholera."

The specification further states that it is necessary to freeze-dry the live hog cholera vaccine "in order to stabilize and preserve potency" and, at the time of use to dilute the dessicated vaccine with sterile water "or other conventional diluents such as phenol glycerin" to obtain the proper dose. Appellants' invention eliminates the use of such diluents by combining a "dried" live vaccine with a dead fluid antigen. The specification states:

" * * * Thus, when hog cholera vaccine and swine erysipelas bacterin are injected separately, in conventional manner, it is customary to use a total of at least 7 cc. of the two antigens (usually 2 cc. hog cholera vaccine and 5 cc. of the erysipelas bacterin). On the other hand, when using the combination of the present invention, the volume of a satisfactory dose is reduced to about 5 cc. representing a saving of about 30%."

Claims 10 and 11 are representative of the claims on appeal and read:

"10. A single injectable dose of antigens for treating an animal from the group consisting of canines and hogs, said antigen being selected from the group consisting of bacterial and viral antigens effective against different animal infections, at least one of said antigens being

live and another dead, said dose being in the form of a suspension of the antigens and the antigens being each present in sufficient concentration to produce immunity against said infections and thereby protect the animal, said dose of antigens being selected from the group consisting of (1) a mixture of swine erysipelas bacterin and a hog cholera vaccine and (2) a mixture of a canine distemper vaccine and a canine hepatitis vaccine.

"11. The method of preparing a single injectable dose of antigens for treating an animal from the group consisting of canines and hogs, said antigen being selected from the group consisting of bacterial and viral antigens effective against different animal infections, at least one of said antigens being live and another dead, comprising the steps of reconstituting at least one of said desiccated antigens with a liquid containing another of said antigens and forming a liquid suspension of said antigens, the antigens in said suspension being each present in sufficient concentration to produce immunity against said infections and thereby protect the animal, said dose of antigens being selected from the group consisting of (1) a mixture of swine erysipelas bacterin and a hog cholera vaccine and (2) a mixture of a canine distemper vaccine and a canine hepatitis vaccine."

The four remaining claims are drawn to the "single injectable dose of antigens" and are more limited than claim 10, claim 11 being the only method claim.

The board set forth the examiner's position as follows:

"The examiner has rejected the claims as unpatentable over Wilson, who shows a polyvalent vaccine or New and Non Official Remedies showing a mixture of vaccines with and without aluminum hydroxide. In view of the admitted conventional

administration of either live or dead hog cholera virus and erysipelas bacterins to immunize against both these prevalent diseases, the examiner considers it without invention to use the old expedient of mixing vaccines for simultaneous administration."

The examiner further relied on Freund, Ward, and Ramon as showing the compatability of live and dead antigens as well as enhancement of the immunity produced by one of the antigens.

The board found the examiner's position to be "without reversible error" and further held that "the facts herein are indistinguishable from those in the case of Funk Brothers Seed Company v. Kalo Inoculant Company, 1948 C.D. 671; 608 O.G. 641; 333 U.S. 127 [68 S.Ct. 440, 92 L.Ed. 588]; 76 USPQ 280." It then concluded:

"Accordingly, even though the claimed combination is new, useful, and provides an advantage in that a single administration injection is necessary, to be patentable it also must satisfy the statutory requirements of invention or discovery. Funk Brothers Seed Company v. Kalo Inoculant Company, supra."

The issue presented is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

What was the state of the prior art at that time?

Wilson, a 1912 publication, states regarding dead bacterial vaccines:

"* * * In veterinary medicine bacterial vaccines are used chiefly for the treatment of suppurative conditions. The vaccine may be monovalent—that is, contain but one strain of bacteria; or polyvalent, containing two or more strains. * * *"

while New and Non Official Remedies, a 1953 publication, teaches the combination of a dead pertussis (whooping cough) vaccine and either a diphtheria toxoid [2] or that toxoid in combination with a tetanus toxoid.

Freund discloses that:

"* * * living, virulent tubercle bacilli injected into the peritoneal cavaties of guinea pigs brought about an enhancement of antibody formation to various antigens subsequently introduced by the same route. Killed tubercle bacilli were almost ineffective. * * *"

and Ward et al. teach that a poliomyelitis virus antigen plus a small amount of killed "myco. butyricum" produce a higher antibody count than the same antigen without the adjuvant.

Ramon et al. teach that mixtures of tetanus anatoxin and Brucella abortus organisms produced "100 times greater" immunity than that produced by the same amount of anatoxin alone.

In addition to the references we also look at the admitted state of the art found in appellants' specification, In re Bellis, 101 F.2d 527, 26 CCPA 845. There it states that the individual antigens are old and had been used separately to immunize against their respective diseases.

We agree with the conclusion below that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious.

Appellants advance the following arguments in support of their position that the alleged invention would not be obvious to one of ordinary skill in the art: (1) although the art teaches combining antigens, it does not teach combining

2. Webster's New International Dictionary, 1954 Edition, gives the following definition:

"toxoid—A toxin, as that of diphtheria treated so as to destroy its toxicity but still capable of inducing the formation of antibodies or injection."

*live and dead* antigens, and it would not be predictable that such a combination would be compatible or effective, citing In re Sibley, 88 .F.2d 960, 24 CCPA 1143, (2) the Kelser article [3] indicates that "there probably exists an antagonism between erysipelas bacterin and hog cholera vaccine, because hogs immuned against hog cholera were noticeably more susceptible to erysipelas infection than non-immunized hogs." [4] and (3) "Appellants' application spells out the presence of synergism * * *."

We think the answer to appellants' first contention is clearly found in the art. The Freund, Ward, and Ramon references each teach that live and dead antigens may be combined without ill-effect. Appellants admit that immunization against both diseases may be accomplished without ill-effect when separate injections are used. Further, single vaccines effective against more than one disease are well known. Therefore, we think the suggestion of combining the antigens is clearly present in the art.

The Kelser article referred to by appellants states:

"Recently Doyle [Doyle, T. M., Vet.Jrn., Vol. 103, No. 1, January 1947] (1947), in studies on the pathogenicity of cultures of *Erysipelothrix rhusiopathiae* for swine, noted that a high percentage of pigs actively immunized against hog cholera were susceptible to the infection when inoculated intra-cerebrally with either cultures of *Erysipelothrix rhusiopathiae* or tissues and blood from hogs affected with the disease. Non-immune hogs appeared to be quite resistant to similar exposure. This is an interesting experimental report but further work is necessary to clarify the relationship between immunity to hog cholera and susceptibility to swine erysipelas."

Appellants now urge that the above would lead one away from the claimed combination. That might be true if those statements stood alone. But, as the board pointed out, Kelser refers to two *live* vaccines. Further, appellants, in an argument presented to the examiner, stated "The work of Doyle has not been substantiated in this country and it is routine practice in areas where both diseases are prevalent to immunize against both diseases at the same time * * *." In view of that state of the art, we do not think one skilled in the art would be hesitant to follow the clear suggestion found in the art to combine the antigens in a single dose.

We are not impressed by appellants' argument concerning synergism. Appellants' brief states:

"* * * It is disclosed in appellants' case that whereas it required a total of 7cc in administering erysipelas bacterin and hog cholera vaccine separately, the present invention required a total of 5cc a saving of almost 30 percent. * * *"

Reliance is also placed on an affidavit of one of the applicants, Dr. Murdock, which states that the instant invention "is believed to define a synergistic effect." No authority has been cited in support of that contention nor have we found any. Synergism is defined in Webster's New International Dictionary, 1954 Edition, as follows:

"synergism—1. Physiol. Co-operative action of discrete agencies such that the total effect is greater than the sum of the two effects taken independently."

Appellants have not shown that the combined vaccine produces a greater effect than the sum of the individual antigens. Although the total amount of injectable material is less—5cc in place of 7cc—the amount of active material present remains the same. Under such circum-

---

3. Kelser Manual of Veterinary Bacteriology, 1948, Williams and Wilkins Co., Baltimore, Md., pages 405–414.

4. Appellants' brief.

stances we do not think appellants have established that synergism is present.

Having found none of the errors alleged, the decision is affirmed.

Affirmed.

MARTIN, J., did not sit or participate because of illness.