Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1445
(Serial No. 10/359,882)

IN RE DAVID W. STAUFFER and JOSEPH P. HOFFBECK
(Real Party in Interest Stauf Enterprises, Inc.)

Eli D. Eilbott, Duncan, Weinberg, Genzer & Pembroke, P.C., of Washington, DC, for appellant. With him on the brief was Joshua E. Adrian.

Stephen Walsh, Acting Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Shannon M. Hansen and Thomas W. Krause, Associate Solicitors.

Appealed from: United States Patent and Trademark Office
Board of Patent Appeals and Interferences

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1445
(Serial No. 10/359,882)

IN RE DAVID W. STAUFFER and JOSEPH P. HOFFBECK
(Real Party in Interest Stauf Enterprises, Inc.)

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED: July 24, 2008

_____

Before SCHALL and PROST, Circuit Judges, and WARD,[*] District Judge.

WARD, District Judge.

David W. Stauffer and Joseph P. Hoffbeck (collectively "SEI"[1]) appeal a decision of the United States Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("Board"), which rejected all claims in SEI's non-provisional patent application. The Board affirmed the examiner's rejection of SEI's application as obvious under 35 U.S.C. § 103 in light of certain prior art references. In re Stauffer, No. 2006-2679 (B.P.A.I. Mar. 30, 2007). For the reasons explained below, we affirm the Board's decision.

---

[*] Honorable T. John Ward, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

[1] The two inventors named on the application, David W. Stauffer and Joseph P. Hoffbeck assigned all right, title, and interest to Stauffer Enterprises, Inc.

I. BACKGROUND

The patent application at issue is application serial number 10/359,882 (the "'882 Application"). The '882 Application relates generally to a device for printing caller ID information associated with a telephone call without user intervention. The caller ID information typically includes date and time information for a given telephone call. Caller ID information may also include other information, such as a telephone number and/or a party's name. SEI states that its invention is an improvement over the prior art because the message taker need not write the call time, date, telephone number, and calling party's name for each message. The message taker may use the printed call records to record relevant message information easily and quickly.

The examiner rejected claims 1-14 of the '882 Application as obvious over United States Patent No. 6,125,170 ("Sawaya") and United States Patent Pub. No. 2003/0126016-A1 ("Asano"). Additionally, the examiner rejected claims 15-16 of the '882 Application as being unpatentable under 35 U.S.C. § 103(a) over Sawaya, Asano, and United States Patent No. 4,747,133 ("Valenzona").

SEI appealed the examiner's rejection to the Board. Two Board decisions are relevant to this case. The first is the Decision on Appeal entered on September 25, 2006 ("Stauffer I"). The second is the Decision on Request for Rehearing, entered on March 30, 2007 ("Stauffer II"). Stauffer I affirmed the examiner's final rejection of claims 1-14 of the '882 Application under 35 U.S.C. § 103(a) as unpatentable over Sawaya and Asano and affirmed the examiner's final rejection of claims 15-16 of the '882 Application under 35 U.S.C. § 103(a) as obvious over Sawaya, Asano, and Valenzona. In Stauffer II, the Board declined to modify Stauffer I.

SEI asks the Court to reverse the Board's decisions and directs the Board to allow the claims in the '882 Application. SEI directed its argument solely to representative claim 1 in this appeal. The claim provides:

1. A caller ID printing device, comprising:
   a controller configured to detect caller ID information from an incoming call; and
   a printer configured to automatically print the caller ID information; and
   a message template onto a call record immediately after the first receipt of a first ring signal and without user intervention

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

SEI bears the burden of showing that the Board committed reversible error. See In re Caveney, 761 F.2d 671, 674 (Fed. Cir. 1985). Obviousness is a legal question based on underlying factual findings. In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Factual determinations include, inter alia, the scope and content of the prior art, the level of skill in the art at the time of the invention, the objective evidence of nonobviousness, the presence or absence of a motivation to combine, and whether a reference constitutes analogous prior art. See In re Biggio, 381 F.3d 1320, 1324 (Fed. Cir. 2004); Gartside, 203 F.3d at 1316; Para-Ordinance Mfg. v. SGS Imps. Int'l., 73 F.3d 1085, 1088 (Fed. Cir. 1995); In re GPAC, Inc., 57 F.3d 1573, 1577 (Fed. Cir. 1995). "What the prior art teaches and whether it teaches toward or away from the claimed invention also is a determination of fact." Para Ordinance Mfg., 73 F.3d at 1088 (citing In re Bell, 991 F.2d 781, 784 (Fed. Cir. 1993)).

This court reviews the Board's underlying factual findings for substantial evidence, and the Board's legal determination without deference. Gartside, 203 F.3d at

1316. Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." Id. at 1312. "[W]here two different inconsistent conclusions may reasonably be drawn from evidence in the record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." In re Jolley, 308 F.3d 1317, 1329 (Fed. Cir. 2002). This court will not determine that a decision made by the Board is unsupported "simply because the Board chose one conclusion over another plausible alternative." Id. at 1320.

On appeal, SEI challenges the Board's holding only as it relates to the obviousness of representative claim 1 in light of the Sawaya and Asano prior art references. SEI makes four arguments for reversing the Board's decisions. First, SEI contends that the Board's conclusion regarding Sawaya's teaching was incorrect. Second, SEI argues that Sawaya discloses the automatic printing of caller ID information only in general terms. Third, SEI argues that the Board failed to identify the motivation to combine Sawaya and Asano. Finally, SEI maintains that the Board failed to identify what constitutes ordinary skill in the art.

In response, the government argues that the '882 Application attempts to claim a device that detects caller ID information from a telephone line and automatically prints the information with a message template immediately after the first ring without user intervention. The government states that representative claim 1 does not specify the particular information that is identified as caller ID information and that is printed by the device. Further, the government argues that claim 1 does not specifically identify the time period in which the caller ID information must be printed. Moreover, the

government states that claim 1 does not prevent a user from adding additional information to the message template.

The government argues that Sawaya discloses a device that detects caller ID information from a telephone line and automatically prints the information with a template without user intervention. The government further states that Asano teaches that caller ID information is typically transmitted between the first and second rings of a telephone—a fact also stated in the '882 Application. For these reasons, the Board concluded that one of ordinary skill in the art would know that caller ID information is typically transmitted at this time and would be motivated to modify the device taught in Sawaya to print the caller ID information immediately after the first ring signal so that it would operate more quickly. The government thus contends that Sawaya and Asano together disclose all elements of representative claim 1 of the '882 Application and that one of ordinary skill in the art would have found it obvious to combine those elements.

Before addressing the parties' arguments, the court first examines Sawaya because that reference is central to the Board's decision. Sawaya states "[t]he invention relates generally to message preparation and distribution and, more particularly, to devices and methods of use which expedite the process of completing message slips with known and new information." The summary of the invention section further notes that "[t]he present invention resides in a message storage and retrieval system wherein visual indicia representative of a message slip is automatically generated with known information and wherein new information may be readily entered and stored in registered alignment with the slip containing the known information." Further, "[b]roadly, the invention automates the task of generating message slips of the

type prepared by a receptionist, by gathering known information such as time and date, while automating and digitizing the entry of new information which is typically of a more custom nature."

Importantly, with respect to caller ID information, Sawaya discloses that "caller-ID capabilities may be provided, in which case the designation of the calling party and/or the number of the calling party may become known and pre-printed and/or stored."

This court will now address the applicants' arguments. The arguments overlap to a certain extent, and may be considered with reference to representative claim 1 by examining the claim on an element by element basis.

A. A controller configured to detect caller ID information from an incoming call

SEI faults the Board's decision by stating that it mistakenly identified the "caller ID" information disclosed in Sawaya. Specifically, SEI characterizes the caller ID information disclosed by Sawaya to be "time and date from a 'clock and calendar module.'" SEI Br. at 28. SEI argues that the date and time information in Sawaya is not the date and time information transmitted in the caller ID signal. Instead, SEI argues that the date and time information in Sawaya comes from "clock and timer circuitry operative to generate an electrical signal indicative of the date and time such that upon request or need for each new message slip, such information will automatically be generated onto the paper prior to being fed over the graphics pad to receive new information in graphical form."

SEI's argument ignores a different passage from Sawaya that states "[t]he telephone interface also preferably includes [sic] further includes a caller-identification (caller-ID) capability, and the controller is further, capable of storing into the memory,

and printing onto the slip, additional known information relating to the incoming call, including the telephone number associated with the incoming call." SEI seeks to limit the definition of caller ID information to call time and date, but provides no justification for limiting the claim term only to only those components. In fact, in its briefing, SEI cites two patents which state that caller ID information is a party's telephone number and/or identity. SEI Br. at 30 n. 14. The Board did not err when it found that Sawaya teaches this element.

## B. A printer configured to automatically print the caller ID information

SEI argues that the Board erred in finding that Sawaya teaches the "automatic" feature in this limitation. The thrust of SEI's position is that Sawaya used "automatic" to mean "printing that occurs only after the receptionist first establishes the 'request or need' for a new message slip." SEI Br. at 25. SEI argues that the receptionist's request or need is a condition precedent to "automatically" printing the caller ID information.

Language from Sawaya refutes SEI's position. The following passages plainly suggest that the receptionist's request or need is not a condition precedent for "automatically" printing the caller ID information:

> The present invention resides in a message storage and retrieval system, wherein visual indicia representative of a message slip is automatically generated with known information and wherein new information may be readily entered and stored in registered alignment with the slip containing the known information. In one embodiment, the visual indicia representative of a message slip is generated by actually printing a paper slip, which may be prepared before or after the entry of the new information. In an alternative embodiment, the visual indicia is generated in electronic form.

> Broadly, the invention automates the task of generating message slips of the type prepared by a receptionist, by gathering known information such as time and date, while automating and digitizing the entry of new information which is typically of a more custom nature.

In its most basic form, the invention includes clock and timer circuitry operative to generate an electrical signal indicative of the date and time, such that upon the request or need for each new message slip, such information will automatically be generated onto the paper prior to being fed over the graphics pad to receive the new information in graphical form. As discussed in further detail below, the advancement of the paper to create a new message slip may be brought about either through the entry of a user command such as depression of a push-button such as 112, or, the unit may be coupled to a telephone line 120 through a connection 122 and include circuitry operative to automatically advance the paper supply upon receipt of each incoming telephone call.

SEI claims that the Board erred because Sawaya does not disclose a printer configured to "automatically print the caller ID information" due to the "upon request or need" language referenced above. However, the relevant claim language from the '882 Application ("automatically . . . information") treats only the printing as "automatic," not the generation of the caller ID information. Using SEI's view of the Sawaya language, once a user enters a signal (request or indicative of a need), then the printer automatically prints the caller ID information.

Additionally, SEI states that Sawaya is directed at automating only the note taking process, while the '882 Application is directed to automating everything. But the '882 Application only claims automating the printing process, which is disclosed by Sawaya even under SEI's limited reading of Sawaya.

The final issue with respect to this limitation is SEI's position that Sawaya lacks the requisite specificity to render the invention in the '882 Application obvious. Effectively, SEI argues that Sawaya is not enabled with respect to "automatic" and, therefore, cannot render the '882 Application obvious. Specifically, SEI states that "Sawaya includes no disclosure, in the form of a drawing, written description, or otherwise, that teaches, discloses, or suggests to one of ordinary skill in the art how to

obtain, decode and automatically print caller ID information." SEI Br. at 35. This is not correct.

Sawaya discloses the methods for obtaining and printing the caller ID information. For example, in column 2, Sawaya teaches using a telephone interface with caller ID capability. Further, Figure 2 of Sawaya shows a block diagram of the various components, including a telephone interface.

The '882 Application does not claim a method or apparatus for decoding caller ID information. In fact, the '882 Application teaches using a "caller-ID decoder program" but never teaches the method for decoding caller-ID information. SEI's disclosure of decoding caller ID information is effectively identical to Sawaya, which teaches using a telephone interface with caller ID capability.

The Board did not err by finding that Sawaya teaches this limitation.

C. immediately after receipt of a first ring signal

Asano is directed to a slightly different invention than the '882 Application and Sawaya. Asano focuses on a computer network suited for receiving and processing orders electronically. Generally, however, this field of invention encompasses telecommunications networks, which is a field related to that of the '882 Application.

Paragraph 46 of Asano states that caller ID information is transmitted between the first and second ring signals. The '882 Application discloses the same information: "[c]aller ID information is typically sent over the phone line between the first and second rings of an incoming call." The Board combined Asano and Sawaya to reach its determination of obviousness. However, the only information disclosed in Asano that the Board combined with Sawaya was that caller ID information is transmitted between

the first and second rings. SEI objects to combining Asano with Sawaya, but its objection unduly limits the circumstances under which it is proper to combine references in a manner that is contrary to precedent.

"The motivation need not be found in references sought to be combined, but may be found in any number of sources, including common knowledge, the prior art as a whole, or the nature of the problem itself." Dystar Textlifarben GmbH & Co. Deutschland KG v. C.H. Patrick Co., 464 F.3d 1356, 1361 (Fed. Cir. 2006). "There is no requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention. Rather, the suggestion to combine may come from the prior art, as filtered through the knowledge of one skilled in the art." Motorola, Inc. v. Interdigital Tech. Corp., 121 F.3d 1461, 1472 (Fed. Cir. 1997). Moreover, "[i]n addition to the reference we also look at the admitted state of the art found in appellants' specification." In re Davis, 305 F.2d 501, 503 (C.C.P.A. 1962).

With respect to the "immediately" term, the government argues that a person of ordinary skill would have been motivated to print the information more quickly. We agree with the Board in light of the case law stating that one may combine references to create a product that is more desirable because it is "faster . . . or more efficient." See Dystar, 464 F.3d. at 1356; see also Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1355 (Fed. Cir. 2001). In light of these precedents, the Board did not err with respect to its combination of Asano and Sawaya.

D. without user intervention

For the reasons discussed in connection with the "automatic" limitation, the Board did not err in its analysis of the "without user intervention" requirement.

In addition to SEI's arguments previously addressed, SEI argues that the Board did not specifically identify the background of one of ordinary skill in the art. Procedurally, SEI raised this issue for the first time on appeal.

> On appeal to this Court, 'we have before us a comprehensive record that contains the arguments and evidence presented by the parties' and our review of the Board's decision is confined to the 'four corners' of that record. Just as it is important that the PTO in general be barred from raising new arguments on appeal to justify or support a decision of the Board, it is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the Board.

In re Watts, 354 F.3d 1362, 1367 (Fed. Cir. 2004)(citing In re Gartside, 203 F.3d at 1314).

SEI, therefore, waived this argument. The Board correctly determined that one of ordinary skill would know the timing of the transmission of caller ID information.

## III. CONCLUSION

For the reasons assigned in this opinion, we affirm the Board's decision.